**Robert L. WHITTAKER, Director of Special Fund, Appellant,**

v.

**Ricky PERRY; Young's Sawmill; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 98–SC–621–WC.

Supreme Court of Kentucky.

Feb. 18, 1999.

Benjamin C. Johnson, Louisville, KY, for appellant.

John S. Sowards, Jr., Wilson, Stanley, Bowling and Costanzo, Lexington, KY, for appellee Perry.

Jefferson V. Layson, III, Gregory Scott Gowen, Harned, Bachert, & Denton, Bowling Green, KY, for appellee Young's Sawmill.

## OPINION OF THE COURT

This appeal by the Special Fund concerns whether there was sufficient evidence to support the apportionment of liability pursuant to KRS 342.1202. The specific questions raised are whether there was sufficient evidence that degenerative disc disease constitutes a departure from the normal state of health and whether degenerative disc disease constitutes a dormant condition for the purposes of apportionment. See *Yocom v. Jackson*, Ky., 554 S.W.2d 891 (1977).

Claimant was employed as a truck driver. He was injured on September 15, 1994, when he was struck on the chin by a bar while strapping down logs on the back of his truck. The blow caused him to fall backwards into a pile of logs. In an award entered in October, 1995, he was awarded temporary total disability and medical benefits. When he reached maximum medical improvement, a hearing was held on the question of permanent occupational disability. Claimant alleged that although his condition had improved to some extent, he continued to experience neck, shoulder, and back pain and other disabling problems.

The only medical evidence with regard to the question of apportionment was given by Dr. Eggers, claimant's treating neurosurgeon. He testified that claimant "sustained a blow to the inferior aspect of the jaw which snapped his head back" and that an MRI which he had ordered revealed a large C6–7 disk herniation. He indicated not only that the type of injury which claimant had received could cause a disk to rupture in the presence of degenerative disease but also that claimant's injury had caused his disk to rupture. It was his opinion that claimant had a pre-existing degenerative disk disease at the time of the injury because a normal disk would not be expected to rupture under those circumstances. He concluded that half of claimant's 8% functional impairment was due to the injury, itself, and half was due to the arousal of the pre-existing condition.

The Administrative Law Judge (ALJ) noted that the Special Fund had offered no evidence of its own and had not cross-examined the opposing medical experts. Based

upon Dr. Eggers' testimony, the ALJ concluded that claimant's 20% permanent, partial occupational disability should be apportioned equally between the employer and the Special Fund pursuant to KRS 342.1202. The decision has since been affirmed by the Workers' Compensation Board (Board) and the Court of Appeals, and this appeal by the Special Fund has followed.

The Special Fund asserts that there was insufficient evidence of a prior, dormant condition such as would support apportionment of the award. Related arguments are that there was no evidence that degenerative disk disease constituted a departure from the normal state of health for a 42–year–old laborer or that the condition would eventually become disabling of its own accord.

Having reviewed the evidence, the opinions below, and the arguments of the parties, we are persuaded that the view of the evidence taken by the Board and the Court of Appeals in affirming the ALJ's decision was neither patently unreasonable nor flagrantly implausible. Furthermore, we are persuaded that they neither overlooked nor misconstrued a controlling statute or precedent in determining that there was substantial evidence to support the ALJ's decision. See *Western Baptist Hospital v. Kelly*, Ky., 827 S.W.2d 685 (1992).

*Dorland's Illustrated Medical Dictionary*, 24th edition, defines the term "degenerative" as "pertaining to degeneration" which is defined as follows:

> Deterioration; change from a higher to a lower form; especially change of tissue to a lower or less functionally active form.

It defines the term "disease" as:

> A definite morbid process having a characteristic train of symptoms; it may affect the whole body or any of its parts, and its etiology, pathology, and prognosis may be known or unknown.

In light of these definitions, Dr. Eggers' testimony makes it clear that degenerative disc disease is a departure from the normal state of health, that it is progressive in nature, that the condition existed but was dormant prior to claimant's work injury, and that the condition was aroused into disability by the injury which claimant received. It is apparent that degenerative disk disease is not a mere characteristic but is the type of condition for which the Special Fund bears liability. See *Yocom v. Jackson*, 554 S.W.2d at 896. The Special Fund points to no medical evidence of a relationship between degenerative disk disease and claimant's age; furthermore, we reject any argument that a degenerative disease is not a departure from the normal state of health simply because it may become more common as a worker ages. Claimant's degenerative disk disease was a pre-existing condition of the back, and it complied with the requirements for imposing liability on the Special Fund pursuant to KRS 342.1202.

The decision of the Court of Appeals is affirmed.

All concur.